**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                             Case No.: 3:16-CR-153-J-34-JRK

**MICHAEL EUGENE WILLIAMS**
_____

## SENTENCING MEMORANDUM

The Defendant, **MICHAEL EUGENE WILLIAMS**, files this sentencing memorandum for the Court's consideration at the sentencing hearing set for January 29, 2018, to support his request that the Court sentence him to the minimum mandatory term of imprisonment, followed by a term of supervised release.

Mr. Williams has accepted responsibility and pled guilty to the Indictment, pursuant to a written plea agreement. This charge subjects him to a fifteen-year mandatory minimum prison term. He faces up to a lifetime term of supervised release and a lifetime of civil reporting obligations as a sex offender. Mr. Williams respectfully submits that a guideline sentence would be far greater than necessary to comply with the purposes of sentencing and would ask the Court to impose a sentence 15 years imprisonment.

## MR. WILLIAMS'S HISTORY AND CHARACTERISTICS

Michael Williams is now 61 years old and certainly never expected to be standing in a federal courtroom, wearing an orange jumpsuit, awaiting sentencing for a serious charge like this.

1

He was born in Dayton, Ohio, to a father who was a factory worker and a mother who was a homemaker. He grew up in a full house since he had five siblings. The family members and other friends have provided letters to the Court.

After completing high school, Mr. Williams worked for a company that installed smoke detectors and fire alarms. He moved out of his parents' home and married his first wife in 1977.

A work opportunity brought him to Jacksonville in 1981 and he has remained here since. At first, he worked for W.W. Gay installing fire suppression systems, and eventually earned his way to Field Superintendent. In 1992, he was laid off from his employment. Mr. Williams and his first wife separated and divorced due to infidelity issues by both parties. She was awarded custody of their son.

In 1994, Mr. Williams joined the Jacksonville Sheriff's Department. Mr. Williams first worked one year in corrections, at the Duval County jail, and then transferred to the patrol division. During his time on the police force, he received letters from community members and commendations. A few of these recognitions are attached to the sentencing memo.

In 2001, Mr. Williams married his second wife. As part of his job with the Sheriff's office, Mr. Williams often worked different shifts and overtime hours, and he worked a second job.

Mr. Williams suffers from Type II diabetes, high blood pressure, and an enlarged prostate.   These diseases have affected his health and led to limitations that affected him both physically and emotionally.

When Mr. Williams and his second wife divorced, she also filed domestic violence criminal charges against him. These arrests led to his first experience with the criminal justice system from the defendant's side. He discovered how powerless he could feel, being on the wrong side of the bars, and was shocked at how quickly his 'friends' stopped being true friends.

He also lost his job. A man's sense of self-worth and value is often tied to having a full-time job at a respectable profession. When Mr. Williams left his job, he also lost his self of identity as a respected police officer.

Mr. Williams found himself alone and without financial resources.   Mr. Williams reported that after he got out of jail he was homeless and destitute and lived with friends and in a hotel. He lived for a while in a shelter for about a year. Mr. Williams became so depressed he was having thoughts about suicide.

Once he started receiving his retirement pension, he purchased a double wide trailer and tried to rebuild his life. But he could not find any employment. He was living a much different neighborhood then he was used to.   He felt isolated from his family since he did not want to worry them about his divorce, job loss, and depression.

During this time of isolation he started to use the Internet for sexual purposes and his activities led to the current charges. Mr. Williams began viewing adult pornography.

3

Watching pornography morphed into an increasingly frequent habit. And, as with many others who develop sexual addictions through pornography, as the habit increased in frequency, the material he watched also became more risqué and then he ventured into the illegal.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Williams had been accessing pornography on his cell phone and tablet and was using a swinger website called FabSwing. Mr. Williams began talking with the adult woman in Texas and, during their chats, she discussed her daughter who had many medical issues. Mr. Williams stated at first it began with the woman sending some pictures of scars from medical procedures, but then she sent other nude photos of her daughter.

At that point, the correct response would have been for Mr. Williams to stop all contact with this person and even to actively report her to law enforcement authorities. It is a sign of how Mr. Williams had lost his perspective that he did not immediately do so.

## SENTENCING GUIDELINES, POLICY STATEMENTS AND KINDS OF SENTENCES AVAILABLE

Mr. Williams will address the sentencing guidelines and the advisory guidelines range during the sentencing hearing.

## PURPOSES OF SENTENCING

**A.   THE SERIOUSNESS OF THE OFFENSE & RESPECT FOR THE LAW AND JUST PUNISHMENT**

The first part of the punishment in this case is incarceration. By locking up Mr. Williams, the Court controls his whereabouts during the term of imprisonment. The Bureau of Prisons will instruct Mr. Williams on every aspect of his daily life during that time. He will be told where to live (that is, what cell he occupies). He will be told what to wear (a prison uniform). He will be told when to eat and he will be given limited choices on his meals. He will be told when to sleep and when to wake. He will be counted during the day. He will have no unmonitored access to the outside world, either by letter or phone calls or by e-mail. He will be told when his family and friends can visit him, if anyone will travel to the BOP facility.

Mr. Williams has already started to serve his sentence since he has been detained since his arrest. He has been housed in the Bradford County Jail, which has limited programming. There are no work or trustee assignments for federal detainees. There are no educational classes. These is no counseling available. There is no outdoor recreation. Apart from his limited times to and from court, Mr. Williams has not been outside the concrete walls of the jail for over a year.

Congress has established a minimum mandatory sentence. That sentence is fifteen years of imprisonment: 180 months or 780 weeks or 1825 days of incarceration. The message sent by such a significant and lengthy sentence is that such crimes will be judged and sentenced harshly. Mr. Williams recognizes that the sentence he faces is extremely severe.

This is especially true, given Mr. Williams's age. According to the Social Security Administration's Actuarial Life Table, a man of 61 years would be expected to live 20.79 more years. A sentence of fifteen years would be 75% of Mr. Williams's future. This, though, is likely to be an optimistic hope for his life expectancy. He has serious health issues, diabetes and high blood pressure.

And life in prison is hard so living for the time expected by the actuarial table is no guarantee. It will be made even more difficult if it becomes known that Mr. Williams is a former law enforcement officer. That factor of danger and difficulty is only compounded by the nature of this offense.

Second, Mr. Williams must serve a term of supervised release after his release from incarceration. Again, his liberty will be restricted by the requirements imposed by the Court. These include the standard conditions and special conditions as a sex offender.

Third, Mr. Williams must register as a sex offender. He must report to the local authorities periodically (at least two times per year) and update his address. The state authorities maintain a public, searchable database with the offender's name, address, and photograph, and the database provides general information about the person's conviction. Failure to update such information as required as a separate criminal offense, which can subject a person to additional criminal charges for a failure to register appropriately.

**B.   THE NEED FOR DETERRENCE & THE NEED TO PROTECT THE PUBLIC**

Mr. Williams argues that incarceration beyond the fifteen-year minimum mandatory sentence is not the only way to protect the public.  At the point that Mr. Williams will conclude his sentence he will be in his mid-70s and will not represent a threat to others.

Second, as discussed above, a sentence of 180 months of imprisonment sends a message these crimes are taken seriously and receive serious sentences.  This sends a message to the community.

### C   NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE

Mr. Williams acknowledges that he needs counseling.  He must address how his thought processes shifted from being a sworn law enforcement officer, entrusted with the duty to protect and serve, to someone who found such dark corners of the internet appealing.

The closest non-residential Sex Offender Treatment Program (SOTP-NR) offered in the region is at Marianna Federal Correctional Institution in Marianna, FL.  Sex offenders at BOP institutions are typically subject to greater restrictions in terms of access to materials whether print or electronic.  Mr. Williams is requesting placement at the Sex Offender treatment program at Marianna.  This will allow him to start the needed counsel and to be in a safer environment since many of the other detainees will have similar charges.

And although the Court can recommend placement, counseling and educational or vocational programming to the Bureau of Prisons, such recommendations are not binding on the Bureau. However, if the Court orders Mr. Williams to comply with conditions of supervision, the Court, through the United States Probation Officer, can monitor his progress while on supervised release and sanction any misdeeds.

### D. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITY

As the Court is aware, the related case received a sentence of the statutory maximum allowed by her plea. It is an understandable sentence in light of the fact that she was a mother producing and profiting off the victimization of her own child.

Mr. Williams, though, should not receive a like sentence. He was never in direct physical contact with the child. He never made any efforts to travel to the child.

### CONCLUSION

For the above reasons, Mr. Williams requests that the Court impose a sentence of the statutory minimum and allow him some hope of a future outside prison.

Dated: January 24, 2018.

DONNA LEE ELM
FEDERAL DEFENDER
/s/ Lisa Call, Assistant Federal Defender
Lisa Call, Assistant Federal Defender
Florida Bar Number 0896144
200 West Forsyth Street, Suite 1240
Jacksonville FL 32202
Telephone: 904-232-3039
Facsimile: 904-232-1937
Email: lisa_call@fd.org

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by electronic filing to Kelly Karase, U.S. Attorney's Office, 300 North Hogan Street, Suite 700, Jacksonville, Florida 32202 on January 24, 2018.

*Lisa Call*

_____

Lisa Call